Matter of the Application of the CITY OF NEW YORK for a Peremptory Writ of Mandamus *v.* THE BELT LINE RAILWAY CORPORATION.

(Supreme Court, New York Special Term, February, 1920.)

Mandamus — when application by the borough president of the city of New York for a peremptory writ of, granted — meaning of "change of grade"— street railways — Greater New York charter, §§ 383, 441, 442, 447 and 951 — Railroad Law, § 178.

A change in the surface contour of a street does not involve a "change of grade," within the meaning of that term as used in sections 441, 442, 447 and 951 of the Greater New York charter. The grants of power to the city of New York

Supreme Court, February, 1920. · [Vol. 110.

from which a delegation of the power to require a railway company to raise its rails, is necessarily implied, is found in section 383 of the Greater New York charter, read in connection with section 178 of the Railroad Law, and the exercise of the powers so conferred on the borough president, do not necessarily involve a "change of grade" such as only the board of estimate may make.

The borough president of the city of New York has power to decide when and how the city streets shall be repaved and an application by him for a peremptory writ of mandamus directing a railway company to conform its rails to the surface grade of the street as shown on the plans, duly approved, calling a change in the crown of the roadway, will be granted.

Application for a peremptory writ of mandamus.

William B. Coughlan (William P. Burr, corporation cousel), for motion.

Addison B. Scoville (Alfred T. Davison, of counsel), opposed.

Gavegan, J. The city of New York applies for a peremptory writ of mandamus directing the Belt Line Railway Corporation to conform the tram rails of its north track on Fifty-ninth street, between Fifth and Eighth avenues, to the surface grade of the street as shown on certain plans for repaving approved by the borough president. The plans call for a change in the crown of the roadway — the present pavement being approximately flat. On account of the natural slope of the land the tram rails of the north track were laid in 1897, when the road was electrified, at a lower level than the tram rails of the south track. That was done with the approval of the proper authorities. If the new pavement is built up to the surface contour shown on the plans it will be,

in numerous places, higher than the rails of the north track as at present maintained.

It is asserted that in order to raise the rails the concrete and steel structure underneath the tracks must be reconstructed and that the cost will be $10,000.

Respondent contends that section 50 of the Public Service Commissions Law shows that the city of New York has not been granted the power to require that the rails be raised. Let us assume that by said section power was granted to the public service commissions which might be used to require respondent to raise its rails. It does not follow that a grant of power which may be properly exercised to accomplish the same result has not been made to the city. Because we may admit that said section points a way to effectively command respondent to raise the rails we need not conclude that to the city of New York there has not been delegated power which is sufficient, though exercised in an entirely different connection, to the same end.

The case of *People ex rel. City of New York* v. *New York Railways Co.,* 217 N. Y. 310, does not expound any doctrine compelling the inference that the legislature has not effectuated such a delegation of power. The city there sought to have the street railway company relocate one of its tracks in another part of the street. It was held that the city has not been given the power to grant away the street or any part of it for the use of a fixed railway, and therefore it cannot require the street railway company to use another part of the street. The Court of Appeals evidently considered that such action would be equivalent to a grant of such other part of the street. It could no more give that other part of the street to the company which already had its track set in the

Supreme Court, February, 1920.     [Vol. 110.

street, by permission of the legislature, than it could authorize the same use by some other company. It was held that " the location of the tracks was * * * of the substance of the franchise." *Stern* v. *International R. Co.*, 220 N. Y. 284, 296. The same court has shown that the legislature may give to a municipality the power to do just what the city is doing in this case. The case of *People ex rel. City of Olean* v. *W. N. Y. & P. T. Co.*, 214 N. Y. 526, makes it clear that the power in the city to require a street railway company to raise the rails of its tracks may be inferred from the delegation to the city of any power the exercise of which makes necessary, in an instance where the delegated power is properly exercised, that the rails be raised. If it is apparent that the power expressly delegated implies the power to require that the rails be raised, a grant of the latter is contemplated by and included in the grant of the former. Id. 529.

It is also clear that there is no merit in another contention made by respondent: that the power now claimed by the city can be implied, if at all, only from the power to change the grade of a street upon the city map or plan. It is conceded that the board of estimate has not changed the grade of Fifty-ninth street anywhere between Fifth and Eighth avenues. It is entirely immaterial that the board has adopted no resolution having such effect. The street grade, which only the board of estimate can change, is the elevation to which the curb is usually made to conform. It is a theoretical line along the side of a street in relation to which other elevations, especially elevations limited by statute, are calculated. To say that a change in the surface contour of a street involves changes of grade is to state a plain fact. To say that it involves a change of grade within the meaning of

the term "change of grade" as it is used in section 442 of the Greater New York charter and in other sections of the charter, notably 441, 447 and 951, is obviously not true.  Such a change in grade might render impractical or even impossible the repavement contemplated; for, no doubt, the primary elevation in that improvement is the established grade of the street.  A change in that grade would probably require a change in the plans for the repavement.  Across a street there may be an infinite number of elevations or grades, following the crown of the pavement. Nearly every change in pavement would involve changes in such grades but there need be involved no change in the fundamental grade or elevation of the street as shown on the city map or plan.  See *Farrington* v. *City of Mt. Vernon,* 166 N. Y. 233; *Comesky* v. *Village of Suffern,* 179 id. 393.

The grants of power to the city of New York from which the delegation of the power claimed by the city on this application is necessarily implied are found in section 383 of the Greater New York charter read in connection with section 178 of the Railroad Law.  As shown above the exercise of the powers so conferred on the borough president does not necessarily involve a " change of grade" such as only the board of estimate may make.

Respondent argues that it is unreasonable to suppose that the borough president has the power contended for because he might exercise it so often as to make it impossible for the railway company to keep in business.  But the answering affidavits show no facts here requiring me to consider whether a use of the power unreasonable on that score would be legal.

On behalf of the city certain matters are set forth which tend to show that repavement is necessary

but which are really immaterial. The denial thereof raises no issue. For example, the city may change the street surface contour whether or not there is proper drainage now or whether or not all the pavement is in bad condition. And the city's plans could not be defeated by showing that no dangerous conditions exist, or that the work could be done on some plan which would not require a change in the grade of said rails. The denial which relates to paragraph XXI of the petition is qualified by an admission of the essential matters covered by that paragraph. The denial as to notice and demand and that which refers to paragraph XXX of the petition are, in view of the matters admitted, wholly formal. As to the denials of the averments in the twelfth paragraph of Mr. Pinckney's affidavit, it is self-evident that the work cannot properly be carried out according to the plans without raising the rails of the north track. In so far as the rails will, without change from the present level, conform to the contour of the street when repaved according to the plans, it is not now proposed to require respondent to change them. So far as the averments of paragraphs 14 and 15 of Mr. Pinckney's affidavit are material, they are, in spite of their being formally denied, admitted in the answering affidavits or are plainly true. The alleged denials on which respondent relies are of such character as to show its position is entirely without merit.

Apparently it was respondent's purpose to make it appear (1) that various allegations and averments in the moving papers were intended to demonstrate that the adoption of the plan referred to constituted a reasonable and proper exercise of the power granted to the borough president, and (2) that the answering affidavits deny such statements. But those actually denied are immaterial.

If facts exist to sustain the position that the power has not been reasonably or properly exercised, such facts could have been and doubtless would have been set forth by respondent. The borough president has been granted the power to .decide when streets shall be repaved and how they shall be repaved. His duty is to exercise that power as conditions require. Within his proper sphere his acts apparently warranted by the powers and duties conferred and imposed upon him must be deemed to be regular and proper unless the contrary is apparent or is shown. Lawson Presump. Ev. 67, 75; 22 R. C. Law, 472, §§ 143, 144, 145. The motion is granted.

Motion granted.